IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELSIE TOM, as personal representative
of the Estate of Sam Tom,

        Plaintiff,

v.                                                                Cause No. 1:10-CV-01257-LH-WPL

S.B., INC., an Oregon corporation, d/b/a
SHERMAN BROS. HEAVY TRUCKING;
and SAMUEL L. RUFF; and GREAT
WEST CASUALTY COMPANY, a Nebraska
corporation; and PROTECTIVE INSURANCE
COMPANY, an Indiana corporation,

        Defendants.

## DEFENDANT SAMUEL L. RUFF'S
## MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ALAN ASAY

Defendant Samuel L. Ruff, by and through his counsel of record, Allen, Shepherd, Lewis, Syra & Chapman, P.A., (Aaron R. Kugler and Tami L. Keating), hereby submits his Motion in Limine to Exclude Testimony of Alan Asay as it relates to human factors, and fatigue or sleep deprivation. For his Motion, Defendant Ruff states the following:

### Introduction

The accident that is the subject of this case occurred on March 6, 2010. According to Plaintiff's Complaint for Wrongful Death and to Recover Damages for Personal Injury ("Complaint"), the accident occurred near U.S. Highway 491 near the T&R Market. On that day, Decedent Sam Tom was leaving his position at a stop sign, attempting to drive left into the northbound lanes of traffic, and across the southbound lanes of U.S. Highway 491. (Complaint ¶

10). At the same time, Samuel Ruff was driving a tractor with one trailer southbound on U.S. Highway 491. Mr. Tom failed to yield the right of way to oncoming traffic and pulled directly in front of Mr. Ruff's vehicle. Samuel Ruff applied his brakes and swerved to the left, but was unable to avoid the accident. At the time of the accident, Samuel Ruff was an owner/operator for S.B. Inc. and had entered into a lease purchase for the tractor he was driving that day.

As a result of the accident and injuries, Plaintiff is seeking damages for intense fear, burial expenses, hedonic damages, damages for loss of guidance and counseling, and all other damages authorized under New Mexico's Wrongful Death Act, NMSA 1978, § 41-2-3 (2001). (Complaint ¶ 32.) Plaintiff is also seeking punitive damages. (*Id.* ¶ 35.)

On November 16, 2011, Plaintiff disclosed expert Alan Asay, P.E., M.S., as her accident reconstruction expert. Although Mr. Asay appears qualified to provide testimony as to accident reconstruction, he is not, however, qualified to provide testimony regarding human factors, fatigue, or the physiological effects of fatigue on the human body. Specifically Mr. Asay is not qualified to give an opinion that Mr. Ruff was tired or that alleged tiredness had any effect on his driving.

## Arguments and Authorities

### I.     Applicable Law

FED. R. EVID. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.

The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. *See* Advisory Committee's Notes on Fed. R. Evid. 702 (2000 Amendments). *Daubert v. Merrell Dow Pharmaceuticals* set the standard for the application of Rule 702 to the oft-difficult question of whether to allow a jury to hear certain expert opinion testimony. 509 U.S. 579 1993). In *Daubert*, the Court held that a trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Id*. at 589. The overarching subject of the inquiry under Rule 702 is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. *Id*. at 594.

Although Rule 702 affords a court wide latitude to admit expert testimony, such testimony is inadmissible if it does not meet two related requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of fact. *See Daubert*, 509 U.S. at 589-591. The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility. *See Id*. at 592 n.10. The proposed expert testimony of Mr. Asay is not based on special knowledge because his opinions fall outside the area of his expertise. As such, Mr. Asay's proposed testimony is also unhelpful to the trier of fact because it is not based on reliable principles and methods, but rather on assumptions, speculation, and unjustified extrapolation.

Additionally, proposed testimony must be supported by appropriate validation – i.e., "good grounds," based on what is known. *Id*. The elements a trial judge may consider in determining whether a theory or technique is scientific knowledge that can assist the trier of fact includes whether the theory can be or has been tested; whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; whether the expert has

3

adequately accounted for obvious alternative explanations; and whether the opinion is based on an improper reliance on temporal proximity. *Id*. at 593; *General Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994); *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607 (7th Cir. 1993).

**I.   Mr. Asay is not qualified to testify as an expert in human factors in this matter.**

An expert for one purpose is not an expert for all purposes. "Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that an area of the witness's competence matches the subject matter of the witness's testimony." *See* 29 Charles A. Wright, et. al., Federal Practice & Procedure § 6265 at p. 255 & nn. 34 & 35 (1977). Accordingly, not all opinions that happen to be held by an expert are "expert opinions." *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). Opinions falling outside the expert's area of expertise are inadmissible. *See, e.g.*, *Watkins v. Schriver*, 52 F.3d 769, 771 (8th Cir. 1995) (affirming exclusion of neurologist's testimony "that the [plaintiff's neck] injury was more consistent with being thrown into a wall than with a stumble into the corner."); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339-40 (7th Cir. 1989) (rejecting economist's opinion that defendant's conduct "was contrary to good faith and fair dealing").

While Mr. Asay may possess "special knowledge or experience," in accident reconstruction, his identified area of competence, this competency does not match the subject matter of some of his testimony, *i.e.*, human factors regarding whether Mr. Ruff was tired and whether the alleged exhaustion resulted in a reaction time that was below the standard of care for professional truck drivers.

Mr. Asay's testimony regarding whether Mr. Ruff was tired and whether that alleged condition had any effect on his driving should be excluded because Mr. Asay is not qualified to

testify as an expert on this subject, and his opinions will not be helpful to this Court. Mr. Asay is admittedly, not a human factors expert, and has received no training in that area. *See* Deposition of Alan Asay, attached hereto as **Exhibit A**, at 64:7-10. His CV shows no information which would provide the qualifications for providing human factors testimony. *See* CV of Asay, attached hereto as **Exhibit B**. Mr. Asay further admits that he does not have any training in fatigue or sleep deprivation. *See* **Exhibit A**, at 70:6-8. Thus, Mr. Asay lacks the requisite education, experience, or specialized knowledge necessary to opine on any human factors testimony regarding Mr. Ruff or Mr. Tom's decisions leading up to the accident. He specifically states that he does not "crawl into people's minds and analyze the thought processes and decisions." *See* **Exhibit A**, 64: 7-10.

Nevertheless, Mr. Asay is attempting to provide testimony that Mr. Ruff was tired or sleep deprived and that was a potential cause of the accident. Furthermore, Mr. Asay is attempting to provide testimony that Mr. Tom "joins the family of all those operators that do so with the intent to abide the rules and the laws and the safety rules that are associated with that." *See* **Exhibit A**, 64:12-19. Mr. Asay, after admitting that he does not "crawl into people's minds," tries to do exactly that by assuming that Mr. Ruff was tired and Mr. Tom wanted to abide by the rules and the safety laws. Mr. Asay has no expertise that would make him any more qualified than any member of the jury to determine what was happening in the drivers' minds prior to the accident. Mr. Asay is not qualified to provide testimony as to the human factors' contribution of either of the drivers' decisions in this matter, and Defendant Ruff, therefore, respectfully requests that he not be allowed to do so.

**II.    Mr. Asay's testimony regarding Mr. Ruff and Mr. Tom's decisions leading up to the accident are speculative and unsupported by scientific evidence.**

Assuming *arguendo* that Mr. Asay was qualified to offer opinions regarding human

factors, his opinions would still be inadmissible as they are speculative and unsupported by any scientific evidence. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. *See* Advisory Committee's Notes on FED. R. EVID. 702 (2000 Amendments). The *Daubert* Court indicated that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The "overarching subject [of an inquiry under Rule 702] is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id*. at 594.

In order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. *Id*. at 590. Proposed testimony must be supported by appropriate validation—*i.e.*, "good grounds," based on what is known. *Id.* Among the elements that a trial judge may consider in determining whether a theory or technique is scientific knowledge that will assist the trier of fact are: whether the theory "can be (and has been) tested; whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and whether the expert has adequately accounted for obvious alternative explanations. *Id*. at 593; *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994).

Here, Mr. Asay lacks any knowledge, scientific or otherwise, that Mr. Ruff was tired or sleep deprived and that the alleged tiredness was the cause of the accident. Mr. Asay is simply speculating on potential causes for the accident. Mr. Asay even proposes that Mr. Ruff dropping a pretzel could be a potential cause of the accident. See, **Exhibit A**, 72:3-24. Mr. Asay is not using a testable theory and applying that theory to the evidence in this matter. Instead, he is making the bald assertion that Ruff was fatigued and the fatigue caused the accident.

In fact, contrary to Plaintiff's theory that Mr. Ruff was tired or sleep deprived, the officers at the scene found no defects indicating that Mr. Ruff was tired or sleep deprived. *See* Deposition of D.J. Murphy attached hereto as **Exhibit C**, 33:10-21; Deposition of Thomas Mumford attached hereto as **Exhibit D**, 30:2-7, 10-15.  In addition, Gerald Pelt, the driver of a vehicle that was following Mr. Ruff for a distance of two to three miles prior to the accident did not notice any signs of fatigued driving.  Mr. Pelt testified that Mr. Ruff maintained his lane the entire time and that he did not see Mr. Ruff driving erratically.  *See* Deposition of Gerald Pelt attached hereto as **Exhibit E**, 29:9—30:13.  Mr. Pelt also testified that Mr. Ruff took evasive action immediately after Mr. Tom pulled in front of his vehicle. Id. at 40:1-11.

Mr. Asay's opinion is an example of inappropriate extrapolation in its purest form.  When asked for the basis of his opinion that Mr. Ruff was tired, Mr. Asay testified to the following:

> "It's one of these things that he's impaired.  My understanding is, and everybody is somewhat different, but they have to have standards for a purpose.  But everyone is different, but in reality, the sleep deprivation would affect his judgment, his ability to perceive, and his ability to process any kind of an emergency situation…."
>
> "I refer to that because that's just a choice of words.  I'm trying to look.  I just don't have the proper terminology there, but in reality, whether it's sleep deprived or whether it's just overexerted, he should be tired from having driven the long stretch that he had."

*See* **Exhibit A**, 69:14-20; 69:23-70:2.  Thus, Mr. Asay's testimony that simply because Mr. Ruff had been driving for a "long stretch," he was sleep deprived is not based on anything, but Mr. Asay's own speculation.

On the other hand, when Mr. Asay provides testimony regarding Mr. Tom's decisions prior to the accident, he bases his belief that Mr. Tom would have made a proper decision, solely on the fact that Mr. Tom held and maintained a drivers license in the State of New Mexico.  *See* **Exhibit A**, 64:12-19.  To extrapolate that the mere maintaining of a license equates to good

decision-making skills is a farce. Surely, *Daubert* requires more of an expert than this type of speculative opinion made on baseless grounds.

"In its capacity as gatekeeper, the trial court is to separate expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Zeigler v. Fisher-Price*, 2003 U.S. Dist. LEXIS 11184, at *7-8 (N.D. Iowa 2003). Mr. Asay's testimony regarding Mr. Ruff and Mr. Tom's decisions prior to the accident is not based on scientific knowledge or facts in evidence, but instead upon his opinion regarding Mr. Ruff's log-keeping abilities and Mr. Tom's maintaining of a drivers license. Accordingly, Mr. Asay's conclusion that the accident was caused by Mr. Ruff "squander"-ing time prior to the accident is nothing more than an unsupported bottom line that must be excluded. *See Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("[A]n expert who supplies nothing but a bottom-line supplies nothing of value to the judicial process.") (internal citations omitted). Given the complete lack of evidence that indicates that Mr. Ruff was tired or that Mr. Tom made a proper decision pulling out in front of Mr. Ruff, Mr. Asay's testimony lacks the evidentiary relevance and reliability that are the hallmark of admissible expert testimony.

## **CONCLUSION**

At the end of the day, Mr. Asay's opinions regarding Mr. Ruff and Mr. Tom's decisions prior to the accident amount to an impermissible effort to "plug evidentiary holes in [Plaintiff's] case, to speculate, and to surmise." *In re Aluminum Phosphate Antitrust Litig.*, 893 F. Supp. 1497, 1506 (D. Kan. 1995). Lacking any evidence that Mr. Ruff was tired or that Mr. Tom made a proper decision, Mr. Asay offers an opinion based upon nothing more than his subjective and unqualified opinion as to the quality of Mr. Ruff's log-keeping abilities.

WHEREFORE, because Mr. Asay's opinion as to human factors and their relation to Mr.

Ruff and Mr. Tom's decisions prior to the accident are outside of his expertise, and the premise for those opinions are without foundation, they are not helpful to resolving issues in this litigation. Defendant Samuel Ruff, therefore, respectfully requests that this Court enter an Order holding that Mr. Asay is not qualified to offer an expert opinion on human factors in his case, and that such opinion testimony is excluded.

>     Electronically Filed,
>
>     ALLEN, SHEPHERD, LEWIS, SYRA
>       & CHAPMAN, P.A.
>
>     \s\
>     Aaron R. Kugler
>     Address:     P.O. Box 94750
>     Albuquerque, NM  87199-4750
>     Phone #:     (505) 341-0110
>     Fax #:       (505) 341-3434
>     A*ttorneys for Defendant Samuel L. Ruff*

I HEREBY CERTIFY that on the 25th day of June, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Forrest G. Buffington
forrest@barberborg.com

and

Paul D. Barber, Esq.
paul@barberborg.com

Phillip W. Cheves, Esq.
pwcheves@btblaw.com

Brenda M. Saiz, Esq.
BSaiz@rodey.com

\s\
Aaron R. Kugler, Attorney for Defendant Samuel L. Ruff