IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELSIE TOM, as personal representative
of the Estate of Sam Tom,

      Plaintiff,

vs.                             No. 1:10-cv-01257-LH/WPL

S.B., INC., an Oregon corporation d/b/a
SHERMAN BROS. HEAVY TRUCKING;
SAMUEL L. RUFF; GREAT WEST
CASUALTY COMPANY, a Nebraska
Corporation; and PROTECTIVE INSURANCE
COMPANY, an Indiana corporation.

      Defendants.

**PLAINTIFF'S RESPONSE TO S.B. INC.'S OMNIBUS MOTION IN LIMINE**

      Plaintiff responds to defendant S.B. Inc's motion as follows:

**INTRODUCTION**

**I. <u>Governing Standards for Motions in Limine</u>**

      The motion in limine is a creature of neither the Federal Rules of Civil Procedure nor the

Federal Rules of Evidence. *Deghand v. Wal-Mart Stores,* Inc., 980 F.Supp. 1176, 1179

(D.Kan.1997). While it is true that such motions "aid the trial process by enabling the Court to

rule in advance of trial on the relevance of certain forecasted evidence,' " *Palmieri v. Defaria,* 88

F.3d 136, 141 (2nd Cir.1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union

Mines, Inc.,* 652 F.Supp. 1400, 1401 (D.Md.1987)), it is often impossible to consider such

matters without the benefit of surrounding testimony. The better practice is to wait until trial to

rule on many objections. *See Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th

Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975); *Hunter v. Blair,* 120

F.R.D. 667 (S.D.Ohio 1987); *see, e.g., United States v. Lawless,* 153 F.3d 729, 1998 WL 438662, at *4 (10th Cir. July 15, 1998) ("The admissibility of Rule 404(b) evidence will generally be a fact-bound determination, depending to a significant degree on the character of the other evidence admitted at trial, all of which requires a balancing of probative value versus unfair prejudice at trial." (citations omitted) *), cert. denied,* 525 U.S. 1027, 119 S.Ct. 561, 142 L.Ed.2d 467 (Nov. 30, 1998).

The court should also deny a motion in limine when it "lacks the necessary specificity with respect to the evidence to be excluded." *First Savings Bank, F.S.B., v. U.S. Bancorp*, 117 F.Supp.2d 1078, 1082 (D. Kan. 2000); *National Union v. L.E. Myers Co. Group,* 937 F.Supp. 276, 287 (S.D.N.Y.1996). Evidence should be excluded on a motion *in limine* "only when evidence is clearly inadmissible on all potential grounds ... [and] [u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial." *See Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D.Ill.1993).

The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Plair v. E.J. Brach & Sons, Inc.,* 864 F.Supp. 67, 69 (N.D.Ill.1994). Here, S.B. Inc.'s Motion lacks specificity and raises matters so obliquely and broadly that they can hardly be responded to, much less resolved. Accordingly, having failed to meet its burden, S.B. Inc.'s Motion must be denied.

"Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1401 (N.D.Ill.1993). Denial only means that the court cannot decide admissibility outside the context of trial. *Plair v. E.J. Brach & Sons, Inc.,* 864 F.Supp. at 69.

## II. **This motion *in limine* lacks the necessary specificity with respect to the evidence to be excluded or the purported reason for the introduction of such evidence.**

The current motion is too sweeping in scope to be decided *in limine.* S.B. Inc. has sought to have this Court prohibit the plaintiff and their experts from referencing in any manner twenty –nine (29) separate obliquely referenced categories of evidence. The plaintiff can only speculate as to what might be encompassed within many of the listed categories. It is impossible to know the relevance of any particular category of evidence until trial since the admissibility of the specific evidence substantially depends upon the facts developed at trial and the laying of an appropriate foundation.

S.B. Inc.'s Motion *in Limine* is so broad, vague, and lacking of specificity as to make it almost impossible to respond. *See Rosenberg v. Cottrell, Inc.*, 2007 WL 2028789 (S.D. Ill. 2007). Many of the twenty-nine (29) items are mere boilerplate recitations that are not tailored to the facts of this case. *Id.* It is little more than a compilation of the Federal Rules of Evidence. *Id.*

This Court should deny the motion. When, and if, admission of particular pieces of evidence are sought at trial, the Court can deal with them in an appropriate factual context. *See Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D.Ill.1993).

### III. **Categories S.B. Inc. seeks to exclude**

S.B. Inc. has not met its burden in establishing that specific evidence is inadmissible for any reason. The plaintiff is left to respond to vague, broad categories of items. While it is impossible to envision all evidence which might be encompassed within each category or how it might arise at trial, the plaintiff will nonetheless attempt to respond.

    **1.    Reference or Suggestion to S.B. Inc. Net Worth, as Well as Any Information About Its Size, Number of Employees, Number of Tractor Trailers, or Evidence of**

**Executive Compensation, or Other Information About S.B. Inc. Not Directly Related to This Case.**

S.B. Inc.'s attempt to limit evidence related to its size, number of employees, number of tractor trailers, net worth and executive compensations is so broad as to cover any number of matters that are or might be relevant.  The size of the company, number of employees, number of tractor trailers and net worth of S.B. Inc. are directly relevant to plaintiff's claims against S.B. Inc. for negligent hiring, training, retention and supervising of its employees.

At the center of plaintiff's claims is S.B. Inc.'s failure to monitor drivers' hours of service to ensure compliance with Federal Motor Carrier Safety Regulations.  S.B. Inc. representatives have testified that driver Samuel Ruff drove 30 of 35 hours prior to the fatal crash near Gallup. *See Deposition of Dover*, p. 101 line 25 to p. 102 line 7 attached hereto as Exhibit 1.   S.B. Inc. does not compare the driver's logs with satellite tracking data even though driver managers had the ability to do so. *See Deposition of Young*, p. 17 line 12 to p. 18 line 8 attached hereto as Exhibit 2.   S.B. Inc. driver managers supervise 30 to 35 drivers.  *See Deposition of Young*, p. 14 line 7 to p. 16 line 4 attached hereto as Exhibit 2.  Only one driver manager is on duty on Saturdays.  *See Deposition of Young*, p. 13 lines 7-25 attached hereto as Exhibit 2.  S.B. Inc. could have monitored and discovered Mr. Ruff's violations had they decreased the number of drivers supervised by a single manager and increased the level of driver supervision on weekends.  The size of S.B. Inc., number of driver managers and drivers, number of tractor trailers to supervise, and the financial ability to properly supervise its employees and implement safety policies are all relevant and critical to establish what defendant S.B. Inc. could have and should have done with the resources it had.

The plaintiff should be permitted to introduce evidence of net worth and executive compensation because she seeks punitive damages against S.B. Inc.  Evidence of defendant's

wealth and pecuniary ability is admissible in fixing the amount of punitive damages.  See *Aragon v. General Electric Credit Corp*., 89 NM 723, 726 (Ct.App. 1976).  The jury acting as the conscience of the community determines the appropriate size of the award whereby it will adequately punish and deter the defendant.  *Silkwood v. Kerr, McGee Corp*., 769 F.2d 1451 (10th Cir. 1985) (*Quoting Jones v. Lennington,* 629 P.2d 805, 807 (Okla. App. 1981).).

The jury must consider the financial status of S.B. Inc. in order to properly determine the amount of punitive damages that would actually punish and deter a large trucking company.  A punishment will not deter future behaviour if it does not affect the bottom line. Thus plaintiff should have the opportunity to provide the necessary evidence.

### 2.      Insurance

Defendant seeks to prevent any reference to liability insurance citing a previously filed motion *in limine* regarding liability insurance.  It is unclear why defendant S.B. Inc. felt it was necessary to file this motion twice.  This request is duplicative, presented improperly, meant to harass, cause unnecessary delay, or needlessly increase the cost of litigation in violation of Fed. R. Civ. P. 11.  It is likely defendant failed to remove previously filed motions from this boilerplate omnibus motion.  Plaintiff incorporates herein by reference Plaintiff's Response to S.B. Inc.'s Motion to Bifurcate Claims Against Protective Insurance & Motion in Limine Prohibiting the Mention of Liability Insurance During 1st Phase of Trial.

### 3.      Financial Status of S.B. Inc.

S.B. Inc. seeks to prevent any reference to its financial capability.  See discussion at section III(1) supra.

### 4.      Reference to the Size of the Rodey Law Firm

Defendant S.B. Inc. seeks to prevent any reference to size of the Rodey Law Firm, the number of lawyers in the firm, or any suggestion that because defendant hired Rodey Law Firm, they have more resources available.  Defendant also seeks to prevent Plaintiff's counsel from disclosing he was previously an attorney at Rodey Law Firm.  Plaintiff has no intention of inappropriately referring to the Rodey Law Firm unless defense counsel makes the size or resources of the firm an issue at trial.

**5.      Settlement Negotiations**

Defendant seeks to prevent any reference to settlement negotiations pursuant to Fed. R. Evid. 408.  This subject matter is covered by the Federal Rules of Evidence making a motion *in limine* unnecessary. However, without mentioning settlement offers specifically, plaintiff should be permitted to discuss defendant S.B. Inc.'s actions that have forced this case to trial.

**6.      Mediation**

Defendant seeks to prevent any reference to the parties participating in mediation. This subject matter is covered by the Federal Rules of Evidence making a motion *in limine* unnecessary.  Defendant cites Fed. R. Evid. 408, indicating it understands that this matter is fully covered by the rules.

**7.      Special Interrogatories**

S.B. Inc. seeks to prevent any reference which tends to inform the jury of the effect of their answers to Special Interrogatories.  The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks specificity required of a motion *in limine*.  Additionally, the motion is premature as it has not been determined whether special interrogatories will be used at trial or presented to the jury.  If and when the Court settles on particular special interrogatories, the parties can argue over their use.

### 8.        Credibility of Witnesses

S.B. Inc. seeks to prevent any mention, directly or indirectly, by any expert on the credibility of any lay witness testimony.  The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine*.  Plaintiff does not have control over any opinions or testimony offered by any of the witnesses.  An expert witness should dispute testimony of a lay witness, when the testimony is offered in a matter the expert is qualified to give his opinions in, even if such testimony may indirectly speak to the credibility of the lay witness.  An across the board restriction on experts testifying about the credibility of witnesses is improper.  Credibility of witnesses is always at issue.  Therefore, the admissibility of the evidence substantially depends upon how it might be raised at trial.  Thus, a ruling at this juncture is premature.  Should the Court issue an order in this matter, it should apply to all parties.

### 9.        S.B. Inc.'s Motions and Orders In Limine and Objections at Trial

S.B. Inc.'s request to prevent any reference to the motions *in limine* or *Daubert* motions it filed, or any objections made at trial is over broad, vague, and lacks the specificity required of a motion *in limine*.  Pleadings are the statements of the parties and can be properly referenced to and/or quoted from unless improper for some specified reason.  The mere fact that information comes from a parties pleading does not make it inadmissible.

### 10.     Discovery Disputes

This motion *in limine* seeking to prevent any reference to discovery disputes between parties was raised in a separate motion *in limine* filed by defendants. *See* S.B. Inc.'s Motion in Limine to Exclude Order Entered on February 10, 2012.  This request is duplicative and

presented improperly and meant to harass, cause unnecessary delay, or needlessly increase the cost of litigation in violation of Fed. R. Civ. P. 11.

In this case, the Court has already ordered an instruction to be given the jury regarding defendants' discovery abuses. *See Order and Memorandum of Judge Lynch*, Doc. 81 at 28. Although such an instruction at trial may not be commonplace, the discovery abuses of the defendants were not commonplace. *Id.*at 1 ("Few cases in civil court manage to raise eyebrows like this one has."). Judge Lynch ordered such an instruction as a sanction against S.B. Inc. after finding the defendants engaged in overarching repeated discovery abuses. *Id.* at 25-26. Upon finding seven Rule 37 discovery violations committed by S.B. Inc., as well as several violations by defendants' counsel and Samuel Ruff, Judge Lynch concluded, "I can honestly say that I am shocked by the extent of the discovery abuses here." *Id.* At 31. Defendants own dishonest actions, and nothing else, have opened an otherwise closed door to the purview of the jury. The Court has already deemed it appropriate for an instruction regarding these abuses to be given the jury.

### 11.      Files and Stipulations

S.B. Inc. seeks to prevent any request to its counsel in the presence of the jury to produce any information or documents in counsel's file, or to stipulate to any matter. The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine* and should be denied. Additionally, defendant has engaged in numerous discovery abuses throughout litigation, including withholding various documents and information. Plaintiff must be permitted to seek any documents contained in defendant's file which have been discovered missing during the course of trial.

S.B. Inc.'s motion to prevent stipulation requests is premature as it is best considered within the context of the trial. It is impossible for plaintiff to contemplate all of the possible scenarios where stipulation may be proper and necessary.  Under certain circumstances a stipulation request is proper before a jury.  For example, it is possible defendant will try to mislead the jury on an issue.  A stipulation regarding certain evidence capable of providing clarity on the issue to the jury may be proper.  This general example is the best plaintiff can do given the over broad and vague request of S.B. Inc.  Ultimately, any motion to prevent a request for stipulation is best considered within the very specific context of trial.

### 12.     Dollar Amounts of Damages

S.B. Inc. improperly seeks to prevent plaintiff from advancing any dollar amount of damages in *voir dire* or anywhere else, or from discussing in *voir dire* if a jury member is capable of awarding such damages regardless of the law or facts.  Preliminarily, if the Court conducts *voir dire*, such a motion as it pertains to jury selection would be moot.

Plaintiff has a fundamental Constitutional right to a trial by jury in civil suits at common law. U.S. Const. Amend. VII.  The purpose of conducting *voir dire* is to secure an impartial jury, competent to judge and determine the facts in issue without bias, prejudice, partiality. *Teffeteller v. Dugger*, 734 So.2d 1009 (Fla. 1999); *State v. Anderson*, 350 N.C. 152, 513 S.E.2d 296 (1999); *State v. Messelt*, 185 Wis.2d 254, 518 N.W.2d 232 (1994); *State v. Murray*, 744 S.W.2d 762 (Mo. 1988); *Com v. Jones*, 391 Pa. Super. 292, 570 a.2d 1338 (1990); *Schewnke v. State*, 768 P.2d 1031 (Wyo. 1989). Specifically, voir dire of prospective jurors serves a two-fold purpose: (1) to determine whether a basis for a challenge for cause exists; and (2) to enable counsel to intelligently exercise peremptory challenges. *State v. Anderson*, 350 N.C. 152, 513 S.E. 2d 296 (1999).  Full knowledge of all relevant and material matters that might bear on the possible

disqualification of a jury is essential to a fair and intelligent exercise of the right of counsel to challenge either for cause or peremptorily. *People v. Blackwell*, 191 Cal. App. 3d 925, 236 Cal. Rptr. 803 (1st Dist. 1987).  Plaintiff must be allowed to determine if prospective jurors, without regard to the facts or the law, simply will not award certain amounts of damages.  Without discussing concepts of damages during *voir dire*, plaintiff is unable to intelligently challenge for cause or exercise a peremptory challenge.

Plaintiff is permitted, and should as a matter of advocacy, request the jury award a specified amount of damages.  Defendant attempts to characterize zealous advocacy as improper prejudicial conduct.  Arguments of counsel are not evidence.  See *BC & L Pavement Services Inc. v. Higgins*, 132 NM 490, 498 (Ct.App. 2002).  A reference by a plaintiff's counsel during a jury trial of a personal injury or death action to the amount of damages claimed or expected by his or her client is not improper. *Mileski v. Long Island R. Co.*, 499 F.2d 1169 (2d Cir. 1974); *Rodrigue v. Hausman*, 33 Colo. App. 305, 519 P.2d 1216 (1974); *Tate by McMahon v. Colabello*, 58 N.Y.2d 84, 459 N.Y.S.2d 422, 445 N.E.2d 1101 (1983); *Bell v. Kirby*, 226 Va. 641, 311 S.E.2d 799 (1984).   Plaintiff must have an opportunity to express to the jury what she believes full and fair compensation for her losses would be.  Defendant fails to cite any legal justification for such a limitation on plaintiff and her counsel.

### 13.      Financial Disparity

Defendant seeks to prevent any reference as to any financial disparity between S.B. Inc. and plaintiff or her family.  See discussion at Section III(1) *supra*.

### 14.      Fees Deducted

S.B. Inc. seeks to prevent any reference to the fact plaintiff will not receive the full amount of damages awarded by the jury, because of attorney's fees, expenses and taxes.

Ordinarily, plaintiff's counsel would never consider making such statements, however, should the defendant suggest to the jury plaintiff will get the full amount of any judgment plaintiff would be unfairly prejudiced in her ability to seek full and fair compensation.  In this case, plaintiff must be permitted to disclose the fees, costs and taxes.

### 15.    Community

S.B. Inc. seeks to prevent any suggestions to the jury that they should be the conscience of the community with respect to a verdict in this matter, or that they should make the community proud with their verdict.  The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine*.

Defendant seeks to prevent any suggestion to the jury of their vital and traditional role as the conscience of the community.  Plaintiff has a right to a trial by jury in this case. U.S. Const. Amend. VII.  S.B. Inc.'s attempt to weaken plaintiff's Constitutional right is improper. The American legal system relies upon the jury to represent the community in the administration of justice. Despite the bald assertions of S.B. Inc., there is no conceivable reason a jury would rule on matters not relevant to the case or award an unjustified amount of damages in order to "make the community proud."   Defendant ignores the longstanding role of the jury as the conscience of the community and essentially assumes that jurors would be incapable of performing the duty that is placed upon them to make a fair judgment based upon the law and facts.  A well considered jury verdict should reflect the values of the community when it is made fairly and based upon the law and facts of the case.

Many states, including New Mexico, recognize the duty of the jury is to serve as the conscience of the community whether serving in a criminal or civil action.  *See State v. Rudy,* 2010-NMSC-045 (*see* dissent of Justice Chavez  noting, "the jury's traditional role to act as the finder of fact, the community conscience, and a bulwark between the State and the accused."); *See Rodriguez v.*

*Wal Mart Stores, Inc.*, N10C-01-270 MJB (Del.Super. 3-29-2012) ([t]he law . . . does not compensate for every loss and the jury serves as the conscience of the community, sending a message to exaggerating and overly litigious claimants.); *See Commonwealth v. Young*., 461 Mass. 198, 959 N.E.2d 943 (2012) (the task of the jury is to serve as the conscience of the community); See *People v. Gonzales*, 51 Cal.4th 894, 253 P.3d 185 (2011) (the jury's proper role as the conscience of the community operating within the criminal justice system); *See Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 822 (Ky. 1992) ("The conscience of the community speaks through the verdict of the jury, not the judge's view of the evidence . . ."); *See Prieto v. Commonwealth*, 278 Va. 366 (2009) (In a capital proceeding, the citizens of the Commonwealth of Virginia have a strong interest in having a jury express the conscience of the community on the ultimate question of life or death.);  *See State v. Brown*, 320 N.C. 179, 204, 358 S.E.2d 1, 18 (1987)) ( "Permitting the jury to act as the voice and conscience of the ... community is required because the very reason for the jury system is to temper the harshness of the law with the `commonsense judgment of the community.");  *See Duck Head Apparel Co., Inc. v. Hoots,* 659 So.2d 897 (Ala. 1995) ("The jury serves as the conscience of the community.").

Many cases illustrate the well-established role of the jury to act as the conscience of the community.  The United States Supreme Court has recognized the role of the jury as the conscience of the community holding that a jury must rely on contemporary community standards in deciding issues of obscenity. *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564 (2002).  The doctrine of *forum non conviens* further illustrates the role of the jury to act as the community conscience, by emphasizing local interest factors in determining an appropriate venue.  In New Mexico, the Courts consider public factors including imposition of jury duty

upon the people of a community which has no relation to the litigation and the local interest in having localized controversies decided at home to determine an appropriate venue. See *Marchman v. NCNB Texas Nat. Bank*, 120 N.M. 74 (1995). Implicitly, the community has an interest in the determination of controversies taking place in their backyard.

When punitive damages are at issue the jury can do no more and no less than act as the conscience of the community relying on common sense to determine the appropriate punishment and deterrent. *See Silkwood v. Kerr-Mcgee Corp.*, 769 F.2d 1451 (10th Cir. 1985) (Such large awards have been permitted because the jury, having heard the evidence on the culpability of a defendant's conduct, is peculiarly suited to act as the conscience of the community; the jury determines the appropriate size of the award whereby it will adequately punish and deter the defendant.); *See Jimenez v. Chrysler Corp.,* 74 F. Supp.2d 548 (D.S.C. 1999) ("In a sense, the jury, on the punitive damages issue, truly is the conscience of the community, because it is charged with responsibility for determining the reprehensibility of conduct and what the appropriate punishment and deterrent may be."). Because the jury in the instant case should be allowed to consider punitive damages, it is responsible for punishing and deterring S.B. Inc. The very nature of its role as a disciplinarian seeking to deter future bad behavior requires the jury to act as the conscience of the community by punishing S.B. Inc. for their illegal and unacceptable behavior.

Defendant once again attempts to characterize zealous advocacy by Plaintiff's counsel as inadmissible prejudicial conduct. Arguments of counsel are not evidence. See *BC & L Pavement Services Inc. v. Higgins*, 132 NM 490, 498 (Ct.App. 2002). Defendant's motion jeopardizes plaintiff's ability to make a fair closing argument, is an intimidation on her free speech rights and impinges on her right to a jury trial as it was preserved at common law. The jury is made up of

members of a community, called upon to apply the law of the community, for an incident which took place in their community.  To suggest they are not the conscience of the community or that it would be improper to reference their role in determining the outcomes of a case violates the very basic function and duties of a jury.  Defendant's motion should be denied.

**16.     Juror's Relationship to Insurers**

S.B. Inc. seeks to prevent any questioning during *voir dire* of any relationship or connection of a potential juror to an insurance company.  The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine*.  Further if this Court conducts *voir dire*, this request is moot.

Plaintiff has previously discussed the proper role of the jury and the purpose of *voir dire*. *See* discussion at III(12) supra.  Plaintiff must be allowed to determine if prospective jurors, without regard to the facts or the law, are predisposed to side with insurance companies because of employment.   Without discussing juror relationships to insurance companies during *voir dire*, plaintiff is unable to intelligently challenge for cause or exercise a peremptory challenge.

Should plaintiff have an opportunity to submit questioning during *voir dire,* she should be permitted to question potential juror ties to insurance companies.  By seeking to prevent plaintiff from finding out this information, plaintiff stands to suffer the greater prejudice should a juror, biased because of their affiliation, or family member's affiliation, with an insurance company, be empaneled on the jury.  Any prejudicial impact of such questioning on defendant is minimal because jurors likely understand trucking companies have insurance as it is required by law.

**17.     "Victims" Or Other References To Claimants Or Decedents In Emotionally Charged Terms**

S.B. Inc. seeks to prevent any reference to plaintiff or decedent as a "victim" or "unfortunate," or the use of other inflammatory terms.  The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine*.

Plaintiff's counsel should be permitted to use common and plain language to zealously advocate for his client.  Plaintiff, defendants and this Court have no way of knowing when an emotionally charged term is being used except during the course of trial.  Plaintiff and decedent in this case are, in fact, victims.  A common, general legal reference defines a "victim" as "a person harmed by a crime, tort, or other wrong." Black's Law Dictionary, p. 1266 (abridged 7th ed. 2000).  Plaintiff seeks to use common, plain language to present her case.  At this time, it is impossible to know what specific language may arouse the emotions of defendant or the jury during trial.  Any limitation on such language at this point is premature and should be made during trial.

**18.    Use Of Inflammatory Language to Describe the Accident, e.g., "as a Tragedy" or "Unfortunate Event."**

Defendant S.B. Inc.'s attempt to limit the use of "inflammatory language" such as "tragedy" or "killed," is over broad vague, lacks specificity and is offered to harass and hamstring plaintiff.   Plaintiff's counsel should be permitted to use common and plain language to zealously advocate for his client. Tragedy is an apt description of any event where a person dies in a collision, regardless of who is at fault.  In fact, S.B. Inc. fleet manager Billy Dover testified:

A:      And normally in this kind of situation, since the office is not staffed on Saturday and Sundays, obviously she would have discovered that hours of service violation come Monday morning—

Q:      Okay.

A:        --when she did the normal check call evaluation.  Now that doesn't stop the **tragedy** that occurred.

*Deposition of Billy Dover*, p. 112 lines 15-24 (Emphasis added).

Obviously, Mr. Dover used a common and apt term to accurately describe the incident. Plaintiff can only guess what other language defendant would consider inflammatory.  The language that is appropriate substantially depends upon the evidence admitted at trial. It is impossible to guess what language is appropriate at this time.  Plaintiff believes the evidence will show this was an unfortunate tragedy.  Defendant's attempts to limit plaintiff's use of common, well known, applicable terms violates plaintiff's right to persuasively and vigorously present her case.

### 19.    Site Visits

S.B. Inc. seeks to prevent any type of suggestion to jurors to visit the site of the crash. The evidence S.B. Inc. seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine* and should be denied.

### 20.    Any Suggestion of Other S.B. Inc. Lawsuits

S.B. Inc. request to prevent any reference or suggestion of other S.B. Inc. or other trucking companies' lawsuits seeks to exclude is over broad, vague, and lacks the specificity required of a motion *in limine*.  The admissibility of this evidence substantially depends upon the facts developed at trial and the laying of an appropriate foundation.  Additionally, it may be proper to discuss past lawsuits and acts of S.B. Inc. in order to fully inform the jury on the issues related to awarding punitive damages.

### 21.    Absent Witnesses

Defendant seeks to prevent any reference to the jury about the probable testimony of a witness who is absent, unavailable or not called to testify at trial, or any reference to S.B. Inc. not

calling a particular witness.  Defendant fails to cite any authority for the motion to prevent

reference to probable testimony of witnesses which are not called at trial.  This case has been

fraught with examples of discovery abuse and dishonesty.  Judge Lynch has already ordered

certain instructions be given regarding the meaning of such abuses. Samuel Ruff has perjured

himself in his deposition testimony.  His options are to perjure himself again at trial, plead the

Fifth, or not testify.  If he is not called as a witness by the defendants, plaintiff should be allowed

to comment on the absence.

### 22.   Other Acts

S.B. Inc.'s attempt to prevent suggestion regarding other wrongs or acts that do not form

a direct basis for Plaintiff's claims is over broad, vague, and lacks the specificity required of a

motion *in limine*.  Plaintiff has addressed this motion in more detail, and incorporates herein by

reference: (1) Plaintiff's Response to S.B. Inc.'s Motion for Partial Summary Judgment on

Punitive Damages; and (2) Plaintiff's Response to S.B. Inc.'s Motion in Limine to Exclude

Evidence or References to Prior Log Falsification by Ruff.  The admissibility of this evidence

substantially depends upon the facts developed at trial and the laying of an appropriate

foundation.  S.B. Inc. committed several negligent acts in the hiring, training, retention and

supervising of its drivers, including Samuel Ruff that form a direct basis of Plaintiff's claims.

Additionally, S.B. Inc.'s history of negligently failing to adopt and/or implement company

operation and safety policies are directly related to Plaintiff's claims. Therefore, plaintiff should

be permitted to relate any prior bad acts of S.B. Inc. related to her claims.

### 23.   Suggestion of Prior Accidents

S.B. Inc. seeks to prevent any suggestion of its prior collisions or any of Sam Ruff's prior

collisions. Preliminarily, defendant once again duplicates a motion previously filed as

Defendants Motion *in Limine* to Exclude Previous Incidents Contained on Driver's Safety Jacket. This request is duplicative, presented improperly, meant to harass, cause unnecessary delay, or needlessly increase the cost of litigation in violation of Fed. R. Civ. P. 11.  Plaintiff incorporates by reference herein Plaintiff's Response to Defendants' Motion in Limine to Exclude Previous Incidents Contained on Driver's Safety Jacket.

   Defendants' prior collisions are admissible for the purpose of proving plaintiff's claims regarding the negligent hiring, training and supervising of Samuel Ruff by S.B. Inc.  The prior safety violations and collisions of Samuel Ruff are necessary evidence to show S.B. Inc. violated their own policies and procedures and allowed Mr. Ruff to continue operating a tractor trailer despite his record of violations and collisions. S.B. Inc. adopted a point system for drivers where any driver who accumulates more than 8 points in a 3-year period is deemed unqualified or unsafe to drive. *See Depositon of Muggy II,* p. 24 lines 12 to 18 attached hereto as Exhibit 3. According to S.B. Inc.'s records, Mr. Ruff accumulated either sixty-nine (69) or seventy-one (71) points in the three-year period prior to the collision. *See* S.B. Inc. records attached hereto as Exhibit 4.   S.B. Inc. never enforced its point system against Mr. Ruff.  *See Deposition of Phillips*, p. 14 lines 15 to 20 attached hereto as Exhibit 5.   Had S.B. Inc. followed the disciplinary system they adopted and terminated Mr. Ruff, he would not have killed Mr. Tom. *See Deposition of Hulette*, p. 38 lines 18-24 attached hereto as Exhibit 6.

   The prior collision evidence is critical to plaintiff's claims against S.B. Inc. and not offered to show action in conformity therewith.  The value of the evidence in showing how S.B Inc. knowingly and willingly ignored its own safety policies greatly outweighs any prejudicial impact Mr. Ruff's history may have on defendant.  Finally, evidence of prior collisions should be

considered by the jury when they determine if S.B. Inc.'s conduct was willful, wanton and reckless in awarding punitive damages.

### 24.     Any Suggestion of Any Negligence Not pled In Plaintiff's Complaint

S.B. Inc. attempt to prevent any suggestion of negligence not pled in the Complaint is over broad, vague, and lacks the specificity required of a motion *in limine*.  The admissibility of this evidence substantially depends upon the facts developed at trial and the laying of an appropriate foundation.

Plaintiff must be allowed to produce evidence and suggest negligence directly related to the claims pled in the Complaint, even if not specifically described in detail.  Plaintiff has alleged defendant committed specific acts and omissions of negligence.  As the Complaint was filed long before the completion of discovery, additional specific acts and omissions of negligence have been discovered, and such acts and omissions support the claims made in plaintiff's Complaint. For example, plaintiff does not allege specifically S.B. Inc. allowed its drivers to falsify logs. The Complaint alleges S.B. Inc. failed to properly supervise its employees and failed to comply with Federal Motor Carrier Safety Regulations. Tom Complaint ¶¶ 19, 23.  While plaintiff considers the falsifying of logs and other specific negligent acts and omissions committed by defendants as part of the negligence pled in the Complaint, to the extent it is not, plaintiff should be allowed to introduce evidence of such negligence.

### 25.     Evidence Not Previously Disclosed

S.B. Inc. attempt to prevent any suggestion of evidence not previously disclosed by plaintiff is over broad, vague, and lacks the specificity required of a motion *in limine*. Preliminarily, the admissible evidence should be governed by the Pre-trial Order and not defendant's vague motion.  The admissibility of this evidence substantially depends upon the

facts developed at trial and the laying of an appropriate foundation.  Plaintiff intends to offer

only evidence previously disclosed.  Defendants have a history in this case of failing to disclose

evidence in discovery.  Should plaintiff discover any new evidence prior to trial or during the

course of trial as a result of defendants' failures to disclose, such evidence should be admissible.

Additionally, any new evidence relevant and necessary as a result of defendant's failure to

disclose should be admissible.

**26.     Plaintiff Should Not Introduce Or Make Any Reference To Any Photographs (Including Without Limitation Photographs or Videos), That Depict Mr. Tom Immediately After the Accident, Including O.M.I. Photographs, Or Photographs That Depict Mr. Tom In A Family Setting.**

Defendant wrongly attempts to prevent plaintiff from introducing family photos of

decedent and crash photos which depict Mr. Tom's death.  Plaintiff is entitled to present the

critical evidence of the case despite it being adverse to defendants when the probative value

outweighs the prejudicial effects. Fed. R. Evid. 403.  Defendants have denied killing Mr. Tom in

their Answer to Plaintiff's Complaint putting causation as the critical issue of this case.

Defendants' Answer, ¶¶ 17, 20 and 25.  Defendant now seeks to unreasonably limit plaintiff's

ability to prove causation through all of the relevant evidence available.  The probative value of

the photographs outweighs any prejudicial effect they may have.  Fed. R. Evid. 403.

The photographs of decedent are relevant as to the issues of causation, identification,

point of impact, orientation of the vehicles, and damages.  Photographs of the decedent

immediately following death are admissible when the photographs are relevant to the issues of

the case. *State v. Holden*, 85 N.M. 397, 512 P.2d 970 (App. 1973).  Photographs are properly

admissible for the purpose of clarifying and illustrating the testimony of witnesses and to

corroborate other evidence. *State v. Sedillo*, 76 N.M. 273, 414 P.2d 500 (1966); *State v. Webb*,

81 N.M. 508, 469 P.2d 153 (Ct.App. 1970).  The photographs were taken in the course of the

normal crash investigation and were not made in anticipation of litigation or taken by any of the parties.  The photographs of Sam Tom after the crash clarify and illustrate the testimony of Alan Asay, and corroborate the other evidence.  Leaving out the photographs is like leaving out a piece of a puzzle. Leaving holes in the evidence is likely to confuse or mislead the jury. The photographs are admissible pursuant to Fed. R. Evid. 401, 402, 403.  Plaintiff must be allowed to present them to the jury.

The family photographs of Mr. Tom are also admissible under Fed. R. Evid 401, 402 and 403.  The photos are relevant to the loss felt by the family and their ability to describe their relationship with Mr. Tom.  They are relevant to the value of his life which is an element of damages the jury will consider.  Mr. Tom had close loving relationships with his children and grandchildren.  They have lost that relationship as a result of defendant's negligence.  The photographs will corroborate the testimony of plaintiff and family members called as witnesses.

### 27.   The October 6, 2011 e-mail from Jeff Gunnarson

S.B. Inc. seeks to prevent the introduction or mention of the October 6, 2011 e-mail discussing company hiring, retention and firing policies, including the application of these policies to Sam Ruff.  Despite defendant S.B. Inc.'s attempts to prevent the admission of any evidence related to negligent hiring, training, and supervising of its drivers, plaintiff is entitled to produce all relevant evidence related to these claims, including the e-mail.  The e-mail from Jeff Gunnarson is relevant as it discusses the implementation of safety policies which S.B. Inc. failed to follow and which would have prevented Mr. Ruff from killing Sam Tom.  The e-mail is admissible as an admission of S.B. Inc. of its failure to follow company policies regarding last chance agreements for Sam Ruff and other employees.  S.B. Inc. 30(b)(6) designee testified, "Yeah, I mean to my knowledge, at the time of the accident he [Ruff] was on a last chance

agreement surrounding his interactions with some customers." *Deposition of Muggy I* p. 65 lines 14-17 attached hereto as Exhibit 7. Although Mr. Ruff was on a last chance agreement the document has not been produced by S.B. Inc.  S.B. Inc. safety officer Mark Phillips discussed the necessity of keeping records of last-chance agreements:

> Q:      And a last-chance agreement should be documented? True?
>
> A:      I guess, yes.
>
> Q:      In fact, it must be documented in order to hold somebody accountable for that agreement. True?
>
> A: That's the reason why we have written ones, yes, is to have the documentation.

*Deposition of Mark Phillips*, p. 127 line 25 to p. 128 line 13, Exhibit 5.

If S.B. Inc. had terminated Mr. Ruff after his next violation following the last chance agreement, he would not have killed Mr. Tom.  The e-mail is admissible under Fed. R. Evid. 401, 402 and 403.

This evidence is also admissible to show the mental culpability of S.B. Inc. regarding punitive damages. A court may consider post incident events in addressing whether a Defendant's conduct warrants a punitive damage award.  *See Smith v. Ingersoll-Rand Co.,* 214 F. 3d 1235, 1249 (10th Cir. 2000)(evidence of a culpable mental state may include conduct occurring after the incident in question) *citing Gonzales v. Surgidev*, 120 N.M. 133, 899 P. 2d 576, 584 (1995).  S.B. Inc.'s post incident e-mail admission, "We also need to be better about getting rid of our own drivers who are on a last chance and have another infraction," shows S.B. Inc. realized the failures in their practiced safety policies.  The Jeff Gunnarson further leaves no doubt of S.B. Inc.'s regrets in not firing Mr. Ruff prior to the collision when he continues, "Keeping these drivers around is going to come back and bite us one of these days.  It might

have already with the Sam Ruff case." Because the jury will consider awarding punitive

damages, they should consider the post-incident e-mail and its implications regarding past failed

safety policies and S.B. Inc.'s consideration of altering such policies, only after someone has

been killed and litigation ensued.

      **28.**    **Other Inflammatory Statements and Conduct**

      Defendant S.B. Inc.'s request to prevent plaintiff from using the word "killed" or other

"inflammatory statements" is duplicated in paragraph 18 of Defendant S.B. Inc.'s Omibus

Motion in Limine. This request is presented improperly and meant to harass, cause unnecessary

delay, or needlessly increase the cost of litigation in violation of Fed. R. Civ. P. 11.

      **29.**    **That S.B. Inc. Does Not Have An Appropriate "Corporate Culture" When It Comes To Safety**

      S.B. Inc. improperly seeks to prevent plaintiff from criticizing its "corporate culture."

Plaintiff is not clear on what exactly defendant seeks to limit. The request is over broad, vague,

and lacks the specificity required of a motion *in limine*. Plaintiff incorporates by reference

herein Plaintiff's Response to S.B. Inc.'s Motion for Partial Summary Judgment on Punitive

Damages for further discussion of the necessity to reference S.B. Inc.'s "corporate culture."

      Plaintiff is entitled to present evidence directly related to her claims against S.B. Inc. At

issue in this case, are the safety policies of S.B. Inc. including its hiring, training, supervising and

retention policies and practices. Plaintiff's counsel must be able to zealously advocate for his

client. Arguments of counsel are not evidence. *See BC & L Pavement Services Inc. v. Higgins*,

132 NM 490, 498 (Ct.App. 2002). Defendant once again attempts to characterize zealous

advocacy as inadmissible prejudicial conduct. Defendant's motion jeopardizes plaintiff's ability

to make a fair closing argument and is an intimidation on her free speech rights. The Court

should allow counsel wide latitude in closing argument.

The "corporate culture" of S.B. Inc. strikes at the core of plaintiff's claim for punitive damages.  A jury must determine if the conduct of S.B. Inc. constituted more than mere negligence, but was, in fact, willful, reckless, wanton, fraudulent or in bad faith.  U.J.I. 13-1827. In order to consider punitive damages the jury must be allowed to consider all the policies, practices, behaviors, patterns, intents and purposes of S.B. Inc. related to plaintiff's claims.

## IV. Conclusion

For the reasons set forth above, S.B. Inc.'s Motion *in Limine* should be denied.  Although a hearing is not required, the plaintiff respectfully requests the opportunity to present evidence to the Court at a hearing if the Court is inclined to grant this motion.

Respectfully submitted,

BARBER & BORG, LLC

By____*/s/Paul D. Barber*____
      Paul D. Barber
      Forrest G. Buffington
      P.O. Box 30745
      Albuquerque, NM  87190
      paul@barberborg.com
      (505) 884-0004
      Attorneys for Plaintiffs

I hereby certify that on the 5th day of July, 2012, the foregoing document was filed electronically through the CM/ECF system, which caused the following counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing to:
akugler@allenlawnm.com, bsaiz@rodey.com and forrest@barberborg.com