IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ELSIE TOM, as personal representative
of the Estate of SAM TOM,

      Plaintiff,

v.                                            No. Civ. 10-1257 LH/WPL

S.B. INC., an Oregon corporation, d/b/a
SHERMAN BORS HEAVY TRUCKING;
SAMUEL L. RUFF; GREAT WEST
CASUALTY COMPANY, a Nebraska corporation;
and PROTECTIVE INSURANCE COMPANY,
an Indiana corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on four motions concerning expert testimony: 1) Defendant S.B., Inc.'s Motion in Limine to Exclude Certain Testimony and Opinions of Plaintiff's Expert James A. Acock Pursuant to the Federal Rules of Evidence and *Daubert* ("Acock Motion") (Doc. 131), filed June 26, 2012; 2) Plaintiff's Motion for *Daubert* Hearing ("*Daubert* Motion") (Doc. 193), filed July 30, 2012; 3) Defendant Samuel L. Ruff's Motion in Limine to Exclude Testimony of Alan Asay ("Asay Motion") (Doc. 127), filed June 25, 2012; and 4) Motion in Limine Regarding Certain Opinions of Defendants' "Expert" Ron Feder ("Feder Motion") (Doc. 136), filed June 26, 2012. The Court, having considered the motions, briefs, evidence, arguments, relevant law, and otherwise being fully advised, finds that S.B., Inc.'s Acock Motion will be **GRANTED;** that Plaintiff's *Daubert* Motion will be **DENIED IN PART** and

1

**GRANTED IN PART**; and that Ruff's Asay Motion will be **GRANTED IN PART.** Finally, the Court will **RESERVE RULING** on Plaintiff's Feder Motion and will also consider the admissibility of non-fatigue-opinion testimony to be offered by James A. Acock and Alan Asay at a *Daubert* hearing in advance of trial.  The Court will issue a separate Trial Notice, which will include dates for the pretrial conference, *Daubert* hearing, and trial.

## A. LEGAL STANDARD

Federal Rule of Evidence 702 provides that an expert may testify in the form of an opinion or otherwise if:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony is both relevant and reliable. *See* Fed. R. Evid 702, 2000 Amendments.

*Daubert* challenges, like other preliminary questions of admissibility, are governed by Federal Rule of Evidence 104.  *United States v. Turner*, 285 F.3d 909, 912-13 (10th Cir. 2002).  To determine whether an expert opinion is admissible, the district court performs the following two-step analysis:  1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to

2

render an opinion; and 2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable and helpful under the principles set forth in *Daubert*. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). In addition to satisfying Rule 702 and *Daubert*, proffered expert testimony must also pass muster under Federal Rule of Evidence 403. Fed. R. Evid. 403.

Trial courts have broad discretion in determining the admissibility of expert testimony. *See United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (court's admission of expert testimony is reviewed for abuse of discretion). The court's discretion is equally broad in both deciding how to assess an expert's reliability, including what procedures to use in making that assessment, and in making the ultimate determination of reliability. *Id*. at 1208-09. A district court need not hold a *Daubert* hearing to perform its gatekeeping function, so long as the court has sufficient evidence to perform the task of ensuring that an expert's testimony is both relevant and reliable. *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The district court, however, has no discretion as to the actual performance of its gate-keeping function. *Turner*, 285 F.3d at 913.

**B. ANALYSIS**

   **1. JAMES A. ACOCK**

S.B., Inc. has moved *in limine* to exclude certain of the opinions offered by Plaintiff's trucking expert, James A. Acock. More specifically, S.B., Inc. seeks exclusion of Mr. Acock's "fatigue opinions" – that is, his opinions that 1) Ruff was fatigued at the time of the accident, and 2) his fatigue was a cause of the collision.

3

(Acock Motion, at 4-8.) S.B., Inc. maintains that Mr. Acock is not qualified to offer these fatigue opinions and that they will not assist the trier of fact. (Reply to Acock Motion, at 1.)

With regard to Mr. Acock's qualifications, S.B., Inc. argues that he lacks specific knowledge of the physiological effects of fatigue, both generally and specifically as they relate to Ruff, in order to offer opinions about the role that fatigue played in the subject accident. (Acock Motion, at 5.) Mr. Acock does not claim to be an expert on fatigue or circadian rhythms. (Acock Motion, Ex. B, Acock's Deposition, at 81:1-21.) Nor has he ever met Ruff or studied his metabolism or sleep threshold. (*Id*.) Plaintiff, on the other hand, maintains that such expertise and personal familiarity with Ruff is unnecessary to the formation of Mr. Acock's fatigue opinions. (Pl.'s Resp. to Acock Motion, at ¶ 8.) In fact, Plaintiff argues that it is "unfair and inappropriate" for S.B., Inc. to argue that Mr. Acock is unqualified to offer fatigue opinions because he is not a psychologist, medical doctor, circadian rhythms expert, or human factors expert. (*Id*.) Plaintiff maintains that Mr. Acock *is* well-qualified to testify regarding federal hours-of-safety rules, the impact and consequences of driving while fatigued, and the likelihood of fatigue arising from extreme violations of hours-of-service regulations. (*Id*. at ¶ 7.)

Additionally, Plaintiff also contends that it is "unfair" for S.B., Inc. to suggest that Mr. Acock has failed to demonstrate certain qualifications, as he has not been afforded an unfettered opportunity to explain his qualifications. (*Id*. at ¶ 9.) Plaintiff notes that at Mr. Acock's deposition, her counsel did not *voir dire* him or elicit a full explanation of

4

his training and background.  (*Id*. at ¶ 10.)  She urges the Court to look into Mr. Acock's training, experience, and methods at a proper *Daubert* hearing.  (*Id*.)

As additional support for her *Daubert* hearing request, Plaintiff argues that the bases for Mr. Acock's opinions have been enhanced by discovery conducted after the February 10, 2012 Memorandum Opinion and Order entered by the Honorable William P. Lynch, in which he sanctioned S.B., Inc. for discovery abuse and ordered it to produce certain information.  (*Id*. at 2.)  Plaintiff argues that the "wealth of information" provided through this additional discovery now puts the question of Ruff's fatigue beyond question and "well into the realm of Mr. Acock's experience, training and expertise based on his experience and training."  (*Id*. at ¶ 6.)  Plaintiff attaches Mr. Acock's affidavit to her response brief, in which Mr. Acock states that additional facts came to light as a result of extended discovery, which were not known to him at the time of his original report and deposition.  (*Id*. at Ex. 1, at ¶ 2.)  These additional facts included, most significantly, the fact that Ruff apparently drove 1357 miles in 30 out of 35 hours, between 7:45 a.m. Friday morning until the fatal crash at 6:45 p.m. Saturday evening.  (*Id*. at ¶ 2(f)).  Considering these additional facts, Plaintiff insists that Mr. Acock can now "inform the jury based on his knowledge, training and experience that after driving 30 of 35 straight hours for at least 1357 miles, Mr. Ruff was fatigued."  (*Id*. at ¶ 4.)  Plaintiff contends that Mr. Acock should be given the opportunity to testify at a *Daubert* hearing about his qualifications as they relate to these "enhanced bases" for his opinions. (Pl.'s *Daubert* Motion, at ¶ 1.)

S.B., Inc., on the other hand, maintains that a *Daubert* hearing is unnecessary[1], as Mr. Acock's fatigue opinions will not assist the trier of fact. (S.B., Inc.'s Reply to Acock Motion, at 2-3.) In support, S.B., Inc. references an unpublished case from the District of Kansas, *Vance v. Midwest Coast Transport*, No. 01-1422 WEB, 2004 U.S. Dist. Lexis 31168 (D. Kan. Jan. 2, 2004). (Acock Motion, at 7.)

In *Vance*, the court excluded testimony of the plaintiff's "fatigue expert," who offered opinions that a truck driver was fatigued at the time he parked his truck and that the fatigue caused him to do so improperly. *Id*. at *7-8. The expert in *Vance* had many qualifications specifically related to the study of human factors and fatigue. *Id*. at *8. For example, he served as the Principal Investigator of a Department of Transportation study examining "fatigue factors" for truck drivers. *Id*. He was also published in the field of commercial driver fatigue and alertness, including articles in peer-reviewed journals. *Id*. But even with a relatively extensive background in the study of truck-driver fatigue, the court nevertheless excluded his expert's fatigue opinions. *Id*. at *9-10. The court determined that Plaintiff had not demonstrated that the expert's specific conclusions about the truck-driver's fatigue were based upon scientific, technical, or specialized knowledge. *Id*. at *10. It reasoned that "the effects of irregular sleep and prolonged driving are well known" and concluded that the expert's

---

[1] S.B., Inc. also argues that Plaintiff's *Daubert* motion, which was filed July 30, 2012, is untimely, as the discovery motions deadline was May 21, 2012 and the pre-trial motions deadline was May 29, 2012. Plaintiff counters, insisting that the motion is not untimely, because the motion filed by S.B., Inc. seeking to limit Mr. Acock's opinions was not filed until June 26, 2010. Regardless of the timeliness of Plaintiff's *Daubert* motion, the Court concludes that a *Daubert* hearing is necessary in order for the Court to exercise its gatekeeping function with respect to the admissibility of Mr. Acock's opinions.

fatigue opinions would not assist the trier of fact, as the jury itself could consider whether the truck driver's schedule more likely than not left him fatigued at the time of the accident. *Id*. The court noted that the expert's opinion as to the *effect* of the driver's fatigue were no more helpful to the jury than his opinion as to the *existence* of such fatigue. *Id*. at *12-13. Ultimately, the court concluded that "[t]he effects of fatigue on attention, perception, decision making, and motivation are within the normal life experiences of the jury, and [the expert's opinions were] not the type of specialized knowledge contemplated by Rule 702." *Id*. at *13. The fatigue opinions were therefore excluded. *Id*.

This Court finds *Vance* well-reasoned and persuasive, and concludes that here, too, the fatigue opinions at issue (i.e. that Ruff was fatigued at the time of the accident and that such fatigue was a cause of the accident) are not based upon scientific, technical, or specialized knowledge. After all, it does not take any particular expertise to form the opinion that driving for 30 of 35 hours may result in driver fatigue. A jury can also consider for itself whether any fatigue that Ruff may have suffered contributed to the accident, either by causing him to make a poor driving choice or by delaying his reaction to Tom's vehicle. The Court agrees with the District of Kansas in *Vance* that attention, perception, and decision-making are "within the normal life experiences of the jury." *See id.* at *13. Accordingly, Mr. Acock's fatigue opinions are not admissible expert testimony, and S.B., Inc.'s Acock Motion will be **granted**. *See id.*; *Gust v. Jones*, 162 F.3d 587 (10th Cir. 1998) (holding that the trial court did not abuse its discretion when it excluded testimony of the defendant's accident reconstructionist regarding speed and

whether the plaintiff's negligence contributed to the accident, where the court reasoned that the normal life experiences of the jury would allow it to draw its own conclusions on those subjects).

As a result, a *Daubert* hearing specifically aimed at exploring Mr. Acock's qualifications to offer the subject fatigue opinions is unnecessary. For, even if Mr. Acock was shown to be unassailably qualified through his background and experience to offer opinions about truck-driver fatigue, the opinions are not proper expert testimony under Rule 702. Accordingly, the Court will **deny in part** Plaintiff's *Daubert* Motion.

On the other hand, however, the Court is mindful that *Daubert* requires it to act as a gatekeeper to ensure that speculative and unreliable opinions do not reach the jury. *Daubert*, 509 U.S. at 589 n.7, 597. As a gatekeeper, the Court must perform a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts of the case." *Id*. at 593-94. Although the Court has, in granting S.B., Inc.'s Acock Motion, effectively limited the scope of Mr. Acock's expert testimony, it has not satisfied itself that the balance of Mr. Acock's opinions are admissible under *Daubert*. The parties do not address the admissibility of Mr. Acock's other opinions, including: 1) that had Ruff maintained his lane, he would not have impacted Tom in the driver side door; 2) that Ruff made a "slowed and bad judgment call when he chose to steer left" towards Tom rather than maintain his lane, and that choice was a cause of the accident; 3) that Ruff chose to violate common safety rules, and those violations were a cause of the crash; and 4) that the crash was preventable. (*See* Acock

Motion, Ex. A, at 4.)

Noting that Mr. Acock is not an accident reconstructionist, the Court questions whether certain of these outstanding opinions are proper under Rule 702. Moreover, some of the enumerated opinions may be unhelpful to the jury or unnecessarily state legal conclusions. As a result, the Court finds it necessary to conduct a *Daubert* hearing regarding the admissibility of Mr. Acock's other expert opinions at trial. For this reason, the Court will **grant in part** Plaintiff's *Daubert* motion. Significantly, however, the scope of the hearing will be narrowed by this opinion, as Mr. Acock's fatigue opinions are excluded herein.

### 2. ALAN ASAY

Defendant Ruff seeks exclusion of certain testimony and opinions of Plaintiff's accident reconstructionist, Alan Asay, particularly as they "relate[] to human factors, and fatigue or sleep deprivation." (Asay Motion, at 1.) Ruff argues that Mr. Asay is not qualified to testify as an expert in human factors and therefore is not competent to testify regarding whether Ruff was fatigued and whether fatigue resulted in a reaction time below the standard of care for professional truck drivers. (*Id*. at 4.) Moreover, Ruff insists that Mr. Asay's testimony about Ruff's fatigue at the time of the accident is speculative and unsupported by scientific evidence. (*Id*. at 6.) He argues that Mr. Asay's testimony is based upon nothing more than his subjective and unqualified opinion as to the quality of Ruff's log-keeping abilities. (*Id*. at 8.)

Plaintiff responds, indicating that she does not expect to elicit opinion testimony from Mr. Asay at trial as to whether Ruff was fatigued. (Pl.'s Resp. to Asay Motion, at

2.)   At the same time, Plaintiff notes that she *does* intend to elicit testimony that fatigue is one of the factors that can lead to the inexplicable squandering of time, or delayed reaction time, which was demonstrated by the timing of this accident.   (*Id*.)   Ruff argues that Plaintiff is, in effect, attempting to circumvent the issue of the inadmissibility of Mr. Asay's fatigue opinions.   Additionally, Ruff argues that Mr. Asay's conclusion that the accident was caused by Ruff "squandering time" is nothing more than "an unsupported bottom line" that must be excluded.   (*Id*. at 8 (citing *Rosen v. Ciba-Geigy Corp*., 78 F.3d 316, 319 (7th Cir. 1996), where the court concluded that the opinion of an expert physician that a smoker's patch caused a heart attack was not "real science" and constituted nothing more than a "bottom line [which] supplies nothing of value to the judicial process").)

Additionally, Ruff argues that Mr. Asay's testimony regarding the decisions that Decedent Sam Tom made leading up to pulling onto Highway 491 are speculative and unsupported by scientific evidence.   (Asay Motion, at 8.)   According to Ruff, Mr. Asay bases his belief that Tom would have made a proper decision in pulling onto the highway on the fact that Tom held and maintained a drivers' license in the State of New Mexico.   (*Id*. at 7.)   Plaintiff does not respond to Ruff's arguments concerning testimony or opinions about Tom's actions. However, Plaintiff urges the Court to deny Ruff's Asay Motion in its entirety or, alternatively, to hold a *Daubert* hearing regarding his qualifications.   (Pl.'s Resp. to Asay Motion, at 3.)   Ruff, on the other hand, insists that a *Daubert* hearing is "wholly unnecessary."   (Reply to Asay Motion, at 3.)

Consistent with the Court's ruling herein concerning Mr. Acock's fatigue

opinions, *see supra* Part B.1, the Court will likewise exclude any testimony by Mr. Asay that Ruff was fatigued at the time of the accident or that his fatigue was a cause of the accident.  Such opinions will not assist the trier of fact and are not proper expert testimony under Federal Rule of Evidence 702.  *See Vance*, No. 01-1422, 2004 U.S. Dist. LEXIS 31168, at *10-12.  Accordingly, the Court will **grant in part** Ruff's Asay Motion.  With respect to Mr. Asay's other opinions[2], including his opinion that Ruff "squandered" reaction time before the collision and his opinion regarding the soundness of Tom's decision to pull onto Highway 491, the Court will **reserve ruling** until such time as a *Daubert* hearing is held.

### 3. RON FEDER

Plaintiff seeks an *in limine* exclusion of the opinions offered by S.B., Inc.'s accident reconstructionist, Ron Feder.  Mr. Feder has opined, based on his calculations, that Ruff had 3.5 seconds of reaction time available before the accident.  (Feder Motion, at ¶ 6.)  Acknowledging that Mr. Feder used the "upper values" of "reasonable brake lag time" and "response reaction time," Plaintiff nevertheless concedes that Mr. Feder's methods and mathematical formulas are reliable. (*Id*. at ¶ 6-7.)  Plaintiff insists, however, that the time allotted to Ruff's vehicle was not based on sufficient facts or data.

---

[2] Although the parties have not submitted Mr. Asay's report in conjunction with their briefing on the Asay Motion, his report has been provided by Plaintiff along with her response to a different motion:  Plaintiff's Response to S.B., Inc.'s Motion for Partial Summary Judgment that Sam Tom was Negligent Per Se.  (*See* Doc. 180, Ex. 6). According to his report, the opinions offered by Mr. Asay include the following:  that Ruff "squandered by not taking any action for approximately 3.5 seconds, while the pickup truck continued to pull forward, before he finally reacted"; that a properly trained professional driver would have slowed his vehicle in the safety corridor in which the accident occurred; that a properly trained professional driver would have either maintained his lane of travel or turned to the right rather than veering left; that Ruff had adequate time and distance in which to perceive and react to Tom's vehicle and to avoid the collision; and that, when Ruff finally did react to Tom's vehicle, he "over-reacted" in the direction Tom was traveling. (*See* Doc. 180, Ex. 6a.)

(*Id*.)   Plaintiff argues that Mr. Feder arbitrarily placed Tom's vehicle 22 feet ahead of its actual location, as the "only two eyewitnesses" both testified that Tom started "at" or "behind" the stop sign at the crossing of Highway 491.   (*Id*. at ¶ 7-8.)   In sum, Plaintiff contends that Mr. Feder lacks a proper basis for his timing opinion and that the opinion should therefore be excluded.   (*Id*. at ¶ 10, 11.)

Mr. Feder explains that he positioned Tom's vehicle where he believed a typical vehicle would stop at that intersection and, based on his observations, where traffic actually stopped.   (Feder Motion, Ex. 1, at 55:11-21; 58:11-13.)   Additionally, S.B., Inc. notes, and the Court agrees, that the eyewitness testimony about the starting point of Tom's vehicle is somewhat equivocal and inconsistent.   (Resp. to Feder Motion, at 7.) Further, Mr. Feder testified that based on his experience as an accident reconstructionist, "eyewitnesses descriptions of vehicle positions can be inaccurate."   (*Id*. at Ex. E, at 58:11-13; 60:16-18.)   S.B, Inc. submits that the factual basis of Mr. Feder's timing opinion goes to Mr. Feder's credibility rather than the admissibility of this opinion. (S.B., Inc.'s Resp. to Feder Motion, at 2.)   Maintaining that Plaintiff's opposition to Mr. Feder's factual basis may be brought out in cross-examination at trial, S.B., Inc. urges the Court to deny the Feder Motion.

In order to more thoroughly explore the basis for Mr. Feder's timing opinion, including the experience and background upon which he relied to determine the starting point of Tom's vehicle, the Court will reserve ruling on the admissibility of his timing opinion until such time as the Court holds a *Daubert* hearing in this regard.

Next, Plaintiff attacks Mr. Feder's opinion as to the reasonableness of Ruff's

evasive actions.    Plaintiff references testimony from Mr. Feder that steering to the right or continuing straight were not options that would have made sense to a Ruff, given the relative positions of the vehicles.    (*Id*. at ¶14-17.)    Mr. Feder suggests that this assertion was based on "common sense," a Society of Automotive Engineers article and other literature, as well as his own experience. (Feder Motion, Ex. 1, at 122:16-124:7.) Plaintiff maintains that Mr. Feder's opinion -- that steering right or continuing straight were not viable options for Ruff -- does not assist the trier of fact and is not based on any scientific, technical or specialized knowledge.

As with the admissibility of Mr. Feder's timing opinion, the Court will reserve ruling on Mr. Feder's opinion as to the reasonableness of Ruff's evasive actions in order to more thoroughly explore the basis for such opinion at an evidentiary hearing.    Doing so will allow the Court to determine the admissibility of Mr. Feder's opinion about the reasonableness of Ruff's evasive actions at the same time that it determines the admissibility of Mr. Acock's counter-opinion as to the reasonableness of Ruff's evasive actions.    *See supra* Part B.1.    Accordingly, the Court will **reserve ruling** on the entirety of Plaintiff's Feder Motion until such time as a *Daubert* hearing is held.

    **IT IS THEREFORE ORDERED:**

1) that Defendant S.B., Inc.'s Motion in Limine to Exclude Certain Testimony and Opinions of Plaintiff's Expert James A. Acock Pursuant to the Federal Rules of Evidence and *Daubert* ("Acock Motion") (Doc. 131) is hereby **GRANTED;**

2) that Plaintiff's Motion for *Daubert* Hearing ("*Daubert* Motion") (Doc. 193) is hereby **GRANTED IN PART** to the extent that the Court will hold a *Daubert* hearing

regarding the admissibility of Mr. Acock's opinions and **DENIED IN PART** to the extent that the Court will not consider the admissibility of Mr. Acock's fatigue opinions at the *Daubert* hearing;

3) that Defendant Samuel L. Ruff's Motion in Limine to Exclude Testimony of Alan Asay ("Asay Motion") (Doc. 127) will be **GRANTED IN PART** to the extent that Mr. Asay's fatigue opinions will be excluded; and

4) that **RULING WILL BE RESERVED** on Plaintiff's Motion in Limine Regarding Certain Opinions of Defendants' "Expert" Ron Feder ("Feder Motion") (Doc. 136).

**IT IS FURTHER ORDERED** that a *Daubert* hearing will be held by this Court, at a date provided in the Trial Notice, regarding the admissibility of the expert opinions of James A. Acock, Alan Asay, and Ron Feder.

_____
SENIOR UNITED STATES DISTRICT JUDGE