IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ELSIE TOM, as personal representative
of the Estate of SAM TOM,

      Plaintiff,

v.                                                                                  No. Civ. 10-1257 LH/WPL

S.B. INC., an Oregon corporation, d/b/a
SHERMAN BORS HEAVY TRUCKING;
SAMUEL L. RUFF; GREAT WEST
CASUALTY COMPANY, a Nebraska corporation;
and PROTECTIVE INSURANCE COMPANY,
an Indiana corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant S.B. Inc d/b/a Sherman Bros Heavy Trucking's ("S.B., Inc.") Motion and Memorandum in Support for Partial Summary Judgment that Sam Tom was Negligent Per Se (Doc. 128). The Court, having considered the motions, briefs, evidence, arguments, relevant law, and otherwise being fully advised, concludes that the motion should be denied.

**I.    FACTUAL BACKGROUND**

Viewed in the light most favorable to Plaintiff, the facts presented to this Court are as follows:

The incident that gives rise to this lawsuit occurred on March 6, 2010, in McKinley County, New Mexico, on U.S. Highway 491 in the vicinity of mile marker 6 near the T&R Market and gas station, and was a motor vehicle collision between a 2003 Dodge pickup driven by Plaintiff's Decedent, Sam Tom, and a tractor-trailer driven by Defendant Samuel Ruff. Def.'s Mot. (Doc. 128), Undisputed Fact ("UF") ¶¶ 1-2. The accident occurred where the southbound

lanes of U.S. Highway 491 intersect with the entrance/exit road of the T&R Market and gas station.  *Id*., UF ¶ 3.  The intersection at which the collision occurred has a stop sign that directs traffic entering onto or crossing U.S. Highway 491 to stop.  Pl.'s Resp. (Doc. 180), UF ¶ 1 at 4.  The posted speed limit on U.S. Highway 491 where the intersection is located is 55 mph.  Def.'s Mot. (Doc. 128), UF ¶ 4.

Mr. Tom drove his 2003 Dodge pickup out of the gas station parking lot and stopped at the stop sign directing exiting traffic to stop before entering the highway.  *Id.*  Mr. Tom was facing east and intending to make a left turn onto northbound U.S. Highway 491.  *Id.*, UF ¶ 5.  As he started to go, his rear tires were spinning on gravel, ice, or snow, and it took a couple of seconds or so before the tires grabbed.  Def.'s Mot., Ex. F (Doc. 128-6) at 26-27.[1]  In that time, the tractor trailer came closer.  *Id.*  When the tires regained traction, Mr. Tom accelerated from the stop and entered U.S. Highway 491, across the southbound lanes of U.S. Highway 491.  *See* Def.'s Mot. (Doc. 128), UF ¶ 5 & Ex. F (Doc. 128-6) at 26-27.

At the same time, Mr. Ruff was driving his tractor-trailer at or near the speed limit in the southbound, right-hand lane of U.S. Highway 491.  *See* Def.'s Mot., UF ¶ 6; Pl.'s Resp., Ex. 5 (Doc. 180-8) at 24 & Ex. 6 (Doc. 180-10) at 1 of 4.  Mr. Ruff applied his brakes and steered to the left.  *See* Pl.'s Resp., Ex. 4 (Doc. 180-5) at 40.  Mr. Ruff's tractor-trailer collided with Mr. Tom's vehicle on the inside lane of travel.  *See* Pl.'s Resp., Ex. 5 (Doc. 180-8) at 26.  Mr. Tom did not survive the collision.

According to Plaintiff's expert witness, Alan Asay, based on the skid marks, the tractor-trailer was braking for approximately 0.7 seconds.  *See* Pl.'s Resp., Ex. 6 (Doc. 180-10) at 1 of 4.

---

[1] Defendants argue in their reply that the statements of Thomas Mumford, who investigated the accident, are hearsay because he was reporting what other witnesses observed.  Defendants, however, cited to and relied on portions of this same testimony of Mr. Mumford in their motion.  The Court will therefore overrule the objection at this time and, for purposes of this motion, assume that Plaintiffs will be able to prove at trial through admissible evidence that Mr. Tom's tires briefly lost traction.

Mr. Asay opines that Mr. Ruff had approximately 3.5 seconds prior to his braking and steering to avoid the collision. *See* Pl.'s Resp., Ex. 4 (Doc. 180-7) at 113-14, 118.[2] Mr. Asay noted that in those 3.5 seconds, some perception, reaction, and brake lag time occurred. *See id.* He explained that perception and reaction times could reasonably take 1.5 seconds, but there is justification for those times being even less. *See id.* Accounting for such factors, Mr. Asay concludes that Mr. Ruff reacted too late, and had he reacted sooner, he could have swerved initially to the left, or reduced his speed that would have allowed the Dodge pickup to clear the travel lane, or swerved to the right, all of which would have avoided the collision. *See id.*, Ex. 4 (Doc. 180-7) at 39-40, 113-14, 118 & Ex. 6 (Doc. 180-10) at 1-2 of 4.

Defendants disagree with Mr. Asay's conclusions. They rely in part on the conclusion of the responding officers who investigated the accident scene and concluded that Mr. Ruff was not at fault for the accident, rather, the accident was caused by Mr. Tom's failure to yield to Mr. Ruff at the intersection. *See* Def.'s Mot., Ex. B (Doc. 128-2) at 34. Defendants also cite to the testimony of James A. Acock, Plaintiff's expert on trucking regulations, who stated that Mr. Tom made a "mistake" in coming out into the southbound lane that had "some contributory effect" to the accident. *Id.*, Ex. I (Doc. 128-9) at 109.

## II.   STANDARD OF REVIEW

An important function of summary judgment is to eliminate factually-unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on

---

[2] Mr. Asay opines in his Affidavit that Mr. Ruff had between 4.1 and 4.5 seconds, or between 328 and 361 feet to observe Mr. Tom start to cross the highway and react to him. Pl.'s Resp., Ex. 1 (Doc. 180-1) ¶ 5. Defendants argue that the Affidavit is untimely and constitutes new expert opinion that the Court should not consider. The Court has not relied on the Affidavit to support its conclusion, and declines to decide at this time whether this change to or clarification of Mr. Asay's report should be stricken.

3

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. ANALYSIS

A plaintiff, like a defendant, may be found comparatively at fault under the doctrine of negligence per se. *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 43 & n.2, 73 P.3d 215. To determine whether the doctrine of negligence *per se* applies, a court looks at four elements: (1) there must be a statute prescribing certain actions or defining a standard of conduct, either explicitly or implicitly, (2) the defendant or plaintiff must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent. *Id.* ¶ 43 (quoting *Archibeque v. Homrich*, 88 N.M. 527, 532, 543 P.2d 820, 825 (1975)). Where a statute regulates the operation of motor vehicles on public roads, the requirement is generally

for the protection of the public, which would include Plaintiff here.  *See Equitable General Ins. Co. v. Silva*, 99 N.M. 371, 372-73, 658 P.2d 446, 447-48 (Ct. App. 1983) (stating that requirement that person operating motor vehicle upon public roads be licensed by state is for protection of public, which included plaintiff); *Kelly v. Montoya*, 81 N.M. 591, 594, 470 P.2d 563, 566 (Ct. App. 1970) ("It seems obvious to us that a traffic statute such as s 64-18-49(a), *supra*, was enacted for the benefit of persons using our highways. Plaintiff, a person using the highway, had the benefit of such statute. . . . Since it is foreseeable that blocking the highway may cause other persons to have accidents, a violation of the statute which prohibits such blocking is negligence per se.").  Here, the only issue the parties contest is whether Mr. Tom violated, as a matter of law, the traffic statutes cited by Defendants.

Defendants argue that the theory of negligence per se applies to the actions of Mr. Tom because, after he approached the stop intersection indicated by the stop sign and stopped his vehicle, he failed to "yield the right-of-way" to the other vehicle approaching, in violation of N.M. Stat. Ann. § 66-7-330(B); and he failed to yield to a vehicle that had "entered the intersection from a different highway," in violation of N.M. Stat. Ann. § 66-7-328(A); and, if the road is a private road or driveway, he failed to yield the right of way to all vehicles approaching on the adjacent highway, in violation of N.M. Stat. Ann. § 66-7-331.  Plaintiff argues that material facts exist that preclude ruling as a matter of law that Mr. Tom was negligent per se. Plaintiff asserts that, if Mr. Tom's death was caused by his unexpected wheel slippage and by Mr. Ruff's delayed reaction time and decision to swerve into the left lane, then it cannot be said that at the time Mr. Tom started to cross the intersection, the tractor-trailer constituted an "immediate hazard."

The Court finds that Section 66-7-330(B), which applies for a stop intersection, is the

relevant statute to use in this case: "every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by Section 66-7-345(C) and after having stopped shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on the highway *as to constitute an immediate hazard during the time when the driver is moving across or within the intersection*." N.M. Stat. Ann. § 66-7-330(B) (emphasis added). Under this statute, it is the duty of the driver of the vehicle with the stop sign to yield the right of way to the vehicle on the highway with the right-of-way and "not to drive into the intersection so as to deprive him of his right to proceed uninterruptedly in a lawful manner in the direction in which he was moving." *Bunton v. Hull*, 51 N.M. 5, 9 (1947).

Plaintiff has presented evidence that Mr. Tom fully came to a stop at the stop sign. Further, there is evidence that, at the time Mr. Tom first began moving across the intersection, Mr. Ruff's vehicle was in the outer southbound lane of traffic and Mr. Tom had time to move his vehicle fully across that lane of travel, and would not have collided with Mr. Ruff had Mr. Ruff not moved into the inner southbound lane. A question of fact therefore exists as to whether Mr. Ruff was approaching so closely on the highway as to constitute an immediate hazard.

The Court recognizes that Plaintiff's own theory has Mr. Tom's vehicle not clearing both southbound lanes of traffic before Mr. Ruff passes through the intersection. Moreover, generally, a driver faced with a stop sign when entering a multilane highway is "not warranted in assuming that another driver using that road would not change lanes of traffic where legally he had a right to do so and in a locality where it was shown that traffic conditions required frequent lane changes." *Capps v. Violett*, 488 S.W.2d 695, 697 (Ky. Ct. App. 1972). Although a close question as to negligence per se, the Court nonetheless concludes that the issue is best left to the

jury. Here, there is a fact question as to whether Mr. Tom may have reasonably believed Mr. Ruff would not have changed lanes, given the lack of traffic, obstacles, and use of a turn signal. The jury should therefore determine whether Mr. Ruff's vehicle was close enough to constitute an immediate hazard.

**IT IS THEREFORE ORDERED** that Defendant S.B. Inc d/b/a Sherman Bros Heavy Trucking's Motion and Memorandum in Support for Partial Summary Judgment that Sam Tom was Negligent Per Se (Doc. 128) is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE